501 So.2d 901 (1987)
John F. HERBERT, Jr. and State Farm Fire and Casualty Company
v.
CITY OF KENNER.
No. 86-CA-471.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1987.
*902 Marianne S. Pensa, Blue, Williams & Buckley, Metairie, for third party plaintiffs-appellants.
Edward J. Womac, Jr., Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for third party defendant-appellee.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GRISBAUM, Judge.
This appeal deals with the liability of landowners whose property is used primarily for recreational purposes. The defendants-third party plaintiffs, John F. Herbert, Jr. and State Farm Fire and Casualty Company, appeal the granting of summary judgment in favor of the third party defendant, the City of Kenner. We set aside, amend, and affirm.
We are called upon to determine one principal issue:
Whether the trial court erred in (apparently) finding that our statutory law in La.R.S. 9:2795 grants immunity to landowners who have made their land available for certain recreational purposes absent willful or malicious action.

FACTS
On May 17, 1984, minors Joseph John Raffo, Corey Salathe, and John Herbert III were playing on a mud pile in the Susan Park Playground in Kenner, Louisiana. While the boys were throwing chunks of mud at one another, Joseph Raffo was hit in the eye, causing permanent injury to his sight and head. His father, Joseph G. Raffo, filed suit in the Twenty-Fourth Judicial District Court, alleging the object had been thrown by the Herbert child. Named as defendants were John F. Herbert, Jr. and State Farm Fire and Casualty Company, Herbert's personal liability carrier. Herbert and State Farm answered and filed a third party demand against the City of Kenner as the municipal corporation which owned and was responsible for the maintenance of the playground. Thereafter, the City of Kenner moved for summary judgment, which was granted on April 11, 1986.

ANALYSIS
Initially, we note the record does not contain any reasons for judgment; accordingly, we are not privy to the legal basis which triggered the trial court's granting the motion for summary judgment on behalf of the City of Kenner. Appreciating this adversity, we look to our statutory law in La.C.C.P. art. 966, which, in pertinent part, states:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Under Louisiana's fact-pleading rules, La.C.C.P. arts. 854 and 891, issues of fact naturally become apparent on the face of the pleadings. Starting with the petition and going through the answer to the third party demand, we find mostly general denials in the defendants' answer, as well as in the third party defendant's answer. Obviously, issues of fact exist when factual allegations are denied. A further examination of the record reveals that several depositions have been taken in connection with this litigation; however, none were submitted with the motion. The record contains no supporting depositions, affidavits, and only one set of interrogatories and answers or admissions. The answers to the interrogatories do not shed much light on those facts pleaded and denied in the petitions. Although the memoranda submitted in support of the motion recounts events which took place at the playground, it is not to be considered under La.C.C.P. art. 966 as a document to support a summary *903 judgment. Accordingly, based on the general denials made, we can only conclude that genuine issues of material fact do exist. Therefore, summary judgment is not an available remedy.
Although we determine there is a genuine issue as to material fact, we must further decide whether, as a matter of law, the trial court erred in entering summary judgment, apparently finding that La.R.S. 9:2795 granted immunity to the City of Kenner under the facts presented. La.R.S. 9:2795, which limits liability of landowners whose property is used primarily for recreational purposes, states:
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
Note 2
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care. Acts 1975, No. 615, §§ 2 to 5.
Preliminarily, it is undisputed that the City of Kenner did not act willfully or maliciously and that the playground was not operated on a commercial basis. See McCain v. Commercial Union Ins. Co., 592 F.Supp. 1 (W.D.La.1983). Also, jurisprudence in this state is well-settled that the term "owner" includes governmental entities, such as the City of Kenner. Rodrigue v. Firemen's Fund Ins. Co., 449 So.2d 1042 (La.App. 5th Cir.1984); Pratt v. State of La., 408 So.2d 336 (La.App. 3d Cir.1981), writ denied, 412 So.2d 1098 (La. 1982).
This Circuit, in Rodrigue v. Firemen's Fund Ins. Co., supra at 1043, quoting Pratt v. State of La., supra, stated, "`By its terms, the grant of immunity is made to any landowner who has made his land available for certain recreational purposes. The State, for purposes of this statute, stands in the same position as any other private litigant.' (Underlining supplied.)" We specifically note that in Rodrigue, supra at 1043 this Court clearly stated, "While we do not necessarily agree with this statutory interpretation, we cannot overlook it." In Rodrigue, supra, this Court affirmed the granting of the motion *904 for summary judgment, which dealt with an insurance company's contention that the Jefferson Parish Recreational Department, regarding an incident which occurred in a playground in the Parish of Jefferson, was immune from tort liability because of La. R.S. 9:2795. However, the Louisiana Supreme Court recently dealt with the question as to when property falls within the purview of "land" used for "recreational purposes," as defined in the statute. In Keelan v. State Dep't of Culture, Recreation and Tourism, 463 So.2d 1287 (La. 1985), the property in question was a swimming pool located in Fountainbleau State Park. In reversing the granting of a motion for summary judgment, Justice Marcus commented:
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales.... Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
. . . . .
Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury-causing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the "true outdoors." When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection. (footnote omitted).
Keelen, supra at 1290. Additionally, in Landry v. Bd. of Levee Comm'r of Orleans Levee Dist., 477 So.2d 672 (La.1985), Justice Calogero quoted the Keelen case and added:
In Keelen, with respect to premises we determined that the Legislature by these statutes intended to confer immunity only upon owners of undeveloped, non-residential, rural or semi-rural land areas.

The Legislature surely did not intend to cloak with immunity the owner of such property as is involved here, a recreational area within a populated city, adjacent to a much travelled Lakeshore Drive, and within a stone's throw of an exclusive residential area developed in the City of New Orleans many years ago. Surely the Legislature did not contemplate such property when passing statutes in 1964 and 1975 designed "to encourage owners of land to make land and water areas available to the public for recreational purposes." This is so irrespective of whether the Legislature intended the statutes to be applicable generally to the State and its political subdivisions. (emphasis their own).
Landry, supra at 675.
In light of our jurisprudential mandate, bearing in mind our ability to take judicial notice of the location of Susan Park Playground at 600 29th Street in Kenner, Louisiana, we find that La.R.S. 9:2795's grant of immunity does not apply to this property. Accordingly, we set aside the trial court's granting of the motion for summary judgment.
We now turn to decide whether the pleadings of the third-party demand state a cause of action upon which the City of Kenner can be held liable. Our jurisprudence clearly states that the exception of *905 no cause of action, though not specifically pleaded, may be noticed and considered by the court ex proprio motu. La.C.C.P. art. 927; Randall v. Jena Wire and Cable Co., 415 So.2d 564 (La.App. 3d Cir.1982); Starkey v. Starkey, 209 So.2d 593 (La.App. 1st Cir.1967). The peremptory exception of no cause of action raises a question as to whether our law affords any remedy to the plaintiff under the allegations of its petition. In determining whether the plaintiff's petition states a cause of action, we must look only to the face of the petition and attached documents and must accept as true all well-pleaded facts in the petition and attached documents. Fidelity & Casualty Co. of New York v. Bordelon, 428 So.2d 1162 (La.App. 5th Cir.1983). The exception may be sustained only when it is clearly shown that the law affords no remedy to anyone for the particular grievance alleged. Meche v. Arceneaux, 460 So.2d 89 (La.App. 3d Cir.1984). If the allegations set forth a cause of action as to any part of the demand, the exception must be overruled. Cupp v. Federated Rural Elec. Ins. Co., 459 So.2d 1337 (La.App. 3d Cir. 1984).
The pleadings of the third party demand against the City of Kenner are as follows:
2.
Third party plaintiffs had been made defendants in a suit by Joseph F. Herbert, Jr., individual[ly] and in his capacity as administrator of the [] estate of the minor child, John F. Herbert, III, it being alleged that Joseph John Raffo, son of Joseph G. Raffo, threw a missle [sic] which struck John F. Herbert, III, in the head and right eye causing the injuries complained of in the petition.[1]
3.
The City of Kenner was owner and responsible for maintenance of the playground where the alleged incident occurred. On that playground, a large clump of mud existed, which clump of mud formed the basis for the alleged incident.
4.
The negligence and/or fault of the City of Kenner consists of the following non-exclusive particulars:
(a) Allowing an attractive nuisance to exist without the proper safeguards;
(b) Failing to adquately [sic] police and patrol its playgrounds;
(c) Any and all other acts of negligence and/or fault as may be proven at a trial of this matter.
In essence, the only action on the part of Kenner is that it allowed a large mud pile to exist on the playground. While the courts of Louisiana have recognized and accepted the doctrine of attractive nuisance,[2] even after the enactment of La.R.S. 9:2791 and 2795, Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791 (1949) and Smith v. Crown-Zellerbach, Inc., 638 F.2d 883 (5th Cir.1981), the jurisprudence is clear that unless a "hidden trap" or "inherently dangerous" instrumentality peculiarly attractive to children exists, there can be no application of the doctrine. Johnson v. New Orleans Pub. Serv., Inc., 291 So.2d 813 (La.App. 4th Cir.1974), writ denied, 293 So.2d 493 (La.1974); Patterson v. Recreation and Park Comm'n for the Parish of East Baton Rouge, 226 So.2d 211 (La.App. 1st Cir.1969), writ denied, 254 La. 925, 228 So.2d 483 (1969); Scott v. Boh Bros. Constr. Co., 195 So.2d 353 (La.App. 4th Cir.1967). The Patterson court specifically reasoned:
Our own jurisprudence accords with the general rule that the principle in question is to be accorded limited application and employed only with caution. The reason for this rule is the tremendous *906 burden placed on the property owner when the principle of attractive nuisance is held applicable. Moreover, the attractive nuisance rule is invoked only when the condition or agency causing injury is of such an unusual nature or character as to render it peculiarly attractive and alluring to children.... not every instrument possibly dangerous to a child of tender years, or which such a child might convert into a means of amusement, constitutes an attractive nuisance. On the contrary, for the attractive nuisance rule to apply, the instrumentality or condition must be of a nature likely to incite the curiosity of a child and fraught with such danger as to reasonably require precaution to prevent children from making improper use thereof. Generally courts exclude application of the rule to conditions or instruments not inherently dangerous or peculiarly attractive to children. (citations omitted).
Patterson, supra at 216. See also Hunter v. Evergreen Presbyterian Vocational School, 338 So.2d 164 (La.App. 2d Cir. 1976). Clearly, a pile of mud does not fall into the category of objects legally considered an "attractive nuisance" because it certainly is not inherently dangerous.
As a matter of law, the presence of a mound of mud used to service a baseball diamond on a playground does not create an unreasonable risk of harm sufficient to impose a duty on the City of Kenner to police the area. See Dunn v. Foster, 422 So.2d 518 (La.App. 5th Cir.1982). Accordingly, the third party plaintiffs' pleadings, we find, do not state a cause of action. Therefore, that part of the trial court's judgment dated May 6, 1986, which dismissed the third party demand of John F. Herbert, Jr. and State Farm Fire and Casualty Company, is affirmed.
For the reasons assigned, we set aside that part of the trial court's judgment which grants the motion for summary judgment, and we amend the judgment to read, "IT IS ORDERED that the third party demand of John F. Herbert, Jr. and State Farm Fire and Casualty Company be dismissed, as against third party defendant, the City of Kenner." The appellants and the appellee are to pay their own costs of this appeal.
SET ASIDE, AMENDED, AND AFFIRMED.
NOTES
[1] In addition to those errors pointed out by brackets, the parties are incorrectly designated in this allegation. These errors, however, are of no consequence to the issues presented herein, and these inconsistencies were apparently not objected to at trial.
[2] See Ibieta v. Phoenix of Hartford Ins. Co., 267 So.2d 748 (La.App. 4th Cir.1972), for five elements of attractive nuisance.