GAIDRY, J.
 

 |2The mother of a minor child appeals a summary judgment dismissing her cause of action for damages against the owner of a residence where her child was accidentally injured. She also appeals a judgment sustaining a dilatory exception of prematurity by the child’s father, who had physical custody of the child at the time of the injury. For the following reasons, we affirm the trial court’s summary judgment but reverse the judgment sustaining the exception, and remand this matter for further proceedings.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 Brooklynn Pinegar is the minor daughter of the plaintiff, Jamie Pinegar Spring-man,
 
 [1]
 
 and the defendant, Bradley Harris. Her parents were never married, and had joint custody of Brooklynn by judgment of the 22nd Judicial District Court for the Parish of St. Tammany. Ms. Springman was designated as the primary custodial parent, with Mr. Harris awarded specific physical custody and visitation rights.
 

 Brooklynn was four years old when the accident forming the basis of this action occurred. On November 4, 2006, Brook-lynn accompanied her father on a social visit to Michael Cascio’s home in Baton Rouge. She had visited Mr. Cascio’s home with her father on a number of prior occasions. On that day, Mr. Cascio, Mr. Harris, Mr. Cascio’s brother, and another friend intended to watch a football game on television. Mr. Harris and Brooklynn arrived at approximately 1:30 p.m., about an hour before the football game began. Mr. Cascio’s fiancée, whose company Brooklynn enjoyed, was expected to arrive later. The men were planning on watching the football game in the living room, which adjoined a kitchen and dining | ¡¡room. The rooms were accessible to
 
 *1084
 
 each other via an open entranceway approximately eight feet wide.
 

 After arriving at Mr. Cascio’s home, Mr. Harris and Brooklynn played for a time. Neither Mr. Harris nor Mr. Cascio had consumed any alcoholic beverages. Shortly before the game began, Brooklynn became hungry and wanted something to eat. Mr. Harris took her into the kitchen and dining room, where he gave her a snack and positioned a dining table chair so that Brooklynn could watch cartoons on a small television in that room. The television, an older model, was securely placed on top of a small table or stand near the dining room table. On top of that television was a glass bowl (the turtle bowl) measuring about a foot wide and six inches tall, the home of a small pet turtle named “Vinnie.” In that position, the turtle bowl was approximately four to five feet from the floor, and Brooklynn could not have reached it either standing on the floor or sitting in the chair. The bowl had a volume or capacity of about a gallon and a flat bottom, and was filled with water to about a third of its capacity. A rock or similar object was also placed within it.
 

 After seating his daughter in the dining room, Mr. Harris walked into the living room to a point about ten steps from where she was seated, from which he had a clear view of her if looking in that direction. He stood there and began to watch the football game when he heard a crash. Mr. Harris estimated that only about ten seconds had elapsed from the time he left his daughter’s side to the time he heard the crash. Mr. Harris ran to his daughter, who was on the floor with the broken turtle bowl. Brooklynn was bleeding from two lacerations to her face, over and under her right eye, and was immediately taken to the emergency room of Our Lady of the Lake Hospital in Baton Rouge.
 

 |4Ms. Springman filed a petition for damages on March 8, 2007, naming Mr. Harris and Mr. Cascio as defendants. She alleged that Brooklynn’s injuries were caused by the negligence of Mr. Harris and Mr. Cascio in failing to supervise Brooklynn on the date of the accident. She subsequently amended her petition to add Farmers Insurance Exchange (Farmers), Mr. Cascio’s liability insurer, as a defendant.
 

 Mr. Harris excepted to the petition, objecting on the grounds of Ms. Springman’s lack of procedural capacity and no right of action according to La. C.C.P. art. 4061.1(C), as she had not qualified as the child’s tutor. On April 23, 2007, by order of the 22nd Judicial District Court, Ms. Springman was appointed tutor of her daughter for purposes of asserting the cause of action for damages, and she amended her petition in this action to affirmatively set forth her status as tutor. The hearing on the exceptions was subsequently continued twice without date, and not taken up by the trial court prior to the present appeal.
 
 [2]
 

 Mr. Cascio and Farmers answered the petition, denying liability, alleging that Brooklynn was under the control and supervision of Mr. Harris at the time of the accident, that the accident was the fault of either Brooklynn or Mr. Harris, and that Mr. Cascio had no responsibility to supervise Brooklynn.
 

 On January 25, 2008, Mr. Cascio and Farmers filed a motion for summary judgment, seeking the dismissal of Ms. Spring-man’s claims against them. In support of
 
 *1085
 
 their motion, those defendants filed copies of the original and first amended petitions, the insurance policy issued by Farmers, and the depositions of Mr. Cascio, Mr. Harris, and Ms. Springman. Ms. Springman opposed the motion by memorandum, but did not file any opposing affidavits or other documents.
 

 On March 20, 2008, Mr. Harris filed a dilatory exception of prematurity, objecting to the petition, as amended, on the grounds that La. R.S. 9:571 prohibits a suit on behalf of an unemancipated child against a custodial parent.
 

 On March 31, 2008, Ms. Springman amended her petition a third time to allege that Mr. Cascio and Mr. Harris were negligent in failing to secure the turtle bowl or remove it from its elevated position, that Mr. Cascio was negligent in failing to warn Mr. Harris that the bowl was not secured, and that the bowl constituted an attractive nuisance. She also affirmatively pleaded the evidentiary doctrine of
 
 res ipsa loqui-tur.
 

 The motion for summary judgment and the dilatory exception of prematurity were heard by the trial court on April 14, 2008. Copies of the depositions and other supporting exhibits previously filed into the record were formally introduced into evidence. Following argument by counsel on the exception, the trial court issued its ruling, granting the motion and sustaining the exception. In its oral reasons for judgment, the trial court determined that neither the doctrine of attractive nuisance nor that of
 
 res ipsa loquitur
 
 was applicable under the facts shown. The trial court further found that the placement of the turtle bowl was not unreasonably dangerous, and that Mr. Cascio did not breach any duty to Brooklynn under the circumstances. While acknowledging that La. R.S. 9:571 did not by its strict terms apply to the parental relationship between Mr. Harris and Brooklynn, the trial court concluded that it was intended to do so, and that the cause of action against Mr. Harris was therefore premature until Brooklynn reached the age of majority. The trial court’s judgment granting the motion for | (¡summary judgment was signed on April 23, 2008, and its separate judgment sustaining Mr. Harris’s exception was signed on April 24, 2008. Ms. Springer appeals both'judgments.
 

 DISCUSSION
 

 Summary Judgment
 

 Summary judgment is subject to
 
 de novo
 
 review on appeal, using the same standards applicable to the trial court’s determination of the issues.
 
 Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.,
 
 07-2206, p. 5 (La. App. 1st Cir.6/6/08), 992 So.2d 527, 530,
 
 writ denied,
 
 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 The mover has the burden of proof that he is entitled to summary judgment.
 
 See
 
 La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements
 
 *1086
 
 essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his |7pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).
 

 In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a
 
 genuine issue of
 
 triable fact.
 
 Hines v. Garrett,
 
 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor.
 
 Willis v. Medders,
 
 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
 

 In an action to recover damages for injuries allegedly caused by another’s negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence.
 
 Hanks v. Entergy Corp.,
 
 06-477, p. 19 (La.12/18/06), 944 So.2d 564, 578. Most negligence cases are resolved by employing the duty-risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element).
 
 Id.,
 
 06-477 at pp. 20-21, 944 So.2d at 579.
 

 The plaintiff in a negligence case may meet his burden of proof by presenting both direct and circumstantial evidence.
 
 Cangelosi v. Our Lady
 
 of
 
 the Lake Reg’l Med. Ctr.,
 
 564 So.2d 654, 664 (La.l990)(on rehearing).
 
 Res ipsa loqui-tur
 
 is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence.
 
 Broussard v. Voorhies,
 
 06-2306, p. 6 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, 1043,
 
 writ denied,
 
 07-2052 (La.12/14/07), 970 So.2d 535. The doctrine permits the inference of negligence from the surrounding circumstances, and merely assists the plaintiff in presenting a pri-ma facie case of negligence when direct evidence is not available.
 
 Cangelosi,
 
 564 So.2d at 665.
 

 Because application of
 
 res ipsa loquitur
 
 is an exception to the general rule that negligence is not to be presumed, it should be sparingly applied.
 
 Spott v. Otis Elevator Co.,
 
 601 So.2d 1355, 1362 (La.1992). Generally, it may be applied when three requirements are met: (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on the defendant’s part.
 
 Id.
 

 Based upon our
 
 de novo
 
 review, we must conclude that
 
 res ipsa loquitur
 
 has no application under the undisputed facts shown here. The circumstances surround
 
 *1087
 
 ing this accident, a child’s fall resulting in lacerations from an object broken in the fall, are not so unusual as to warrant an inference of negligence on the part of Mr. Cascio. Even though the precise manner in which the accident occurred is unknown, the evidence does not show that Mr. Cas-cio had
 
 exclusive
 
 control at the time over the objects that were likely involved in the accident — the chair or the turtle bowI| — or9 any control over Brooklynn.
 
 [3]
 
 Finally, the circumstances alone simply do not mandate a reasonable and fair conclusion that Mr. Cascio breached a specific duty to Brooklynn, resulting in her injuries.
 

 We likewise reject the application of the doctrine of attractive nuisance to the factual circumstances of this matter. Unless a hidden trap or inherently dangerous instrumentality peculiarly attractive to children exists, there can be no application of the doctrine.
 
 Nguyen v. Crescent Land & Dev. Co., Inc.,
 
 527 So.2d 456, 458 (La.App. 5th Cir.),
 
 writ denied,
 
 532 So.2d 769 (La.1988). Generally, the doctrine of attractive nuisance is to be accorded limited application and employed by the courts only with caution. The instrumentality or condition must be of a nature likely to incite the curiosity of a child and fraught with such danger as to reasonably require precaution to prevent children from making improper use of it.
 
 Patterson v. Recreation & Park Comm’n for the Parish of East Baton Rouge,
 
 226 So.2d 211, 216 (La.App. 1st Cir.),
 
 writ refused,
 
 254 La. 925, 228 So.2d 483 (1969). The evidence put forth by Mr. Cascio and Farmers demonstrates that while the presence of “Vinnie” within the turtle bowl might be expected to attract the attention and curiosity of a child, neither the object itself, a glass bowl serving as an aquarium or terrarium, nor its placement atop the television was inherently or unreasonably dangerous.
 

 Brooklynn had no known behavioral problems, and had never broken anything at Mr. Cascio’s home on any prior visit. The deposition testimony of Ms. Spring-man indicates that Brooklynn advised the emergency room physician that she pulled the chair in which she was sitting closer to the television and stood on it to get a closer look at the turtle bowl. That | intestimony also suggests that Brooklynn either struck the television accidentally or attempted to lift the turtle bowl. However, the undisputed testimony of Mr. Harris demonstrated that any such actions on the part of Brooklynn took place within the very brief interval (about ten seconds) from when he left her sitting on the chair, walked about ten steps away to the living room, and briefly directed his attention to the football game. The evidence further confirms that Mr. Cascio had no reason to believe that Brooklynn was not being adequately supervised by her father nor that Brooklynn would attempt to stand on the chair in an attempt to obtain an object out of her normal reach, and that Mr. Cascio had not been asked to assist in her supervision.
 

 We must agree with the trial court’s conclusion that the turtle bowl was not unreasonably dangerous and that Mr. Cas-cio did not breach a specific legal duty to Brooklynn under the circumstances shown. Life is full of risk, but not every risk is unreasonable and actionable.
 
 See Bradford v. Kaster,
 
 98-1051, 98-0758, p. 5 (La. App. 1st Cir.5/14/99), 732 So.2d 827, 831.
 

 Prematurity of Cause of Action
 

 A judgment sustaining a dilatory exception of prematurity and dismissing a
 
 *1088
 
 cause of action on that basis is a final, appealable judgment.
 
 See Butler v. Flint-Goodridge Hosp. of Dillard Univ.,
 
 346 So.2d 1131 (La.App. 4th Cir.1977). The standard of review of such a judgment is that of manifest error.
 
 See, e.g., Tresch v. Kilgore,
 
 03-0035, p. 8 (La.App. 1st Cir.11/7/03), 868 So.2d 91, 95-6.
 

 Louisiana Revised Statutes 9:571, the statute relied upon by Mr. Harris, provides:
 

 The child who is not emancipated cannot sue:
 

 |u(l) Either parent during the continuance of their marriage, when the parents are not judicially separated; or (2) The parent who is entitled to his custody and control, when the marriage of the parents is dissolved, or the parents are judicially separated.
 

 Ms. Springman contends that this statute cannot apply, as she and Mr. Harris were never married. We must agree that according to the strict terms of the statute, an unemancipated minor child of
 
 unmarried
 
 parents is not procedurally barred from suing either parent, even the parent with custody. While this might seem to unfairly discriminate against the minor children of
 
 married
 
 or
 
 divorced
 
 parents, that issue is not properly before us in the present context. We also reject Mr. Harris’s suggestion that permitting this action to proceed against him violates his right, as an unmarried parent, to equal protection of the law. That constitutional issue was not raised in the trial court, and is not concisely argued or supported by authority in his brief. By its terms, the statute does not bar Ms. Springer’s action against Mr. Harris on behalf of Brooklynn as premature.
 
 See Bondurant v. Bondurant,
 
 386 So.2d 705, 706-07 (La.App. 3rd Cir.1980).
 

 Mr. Harris’s dilatory exception of prematurity should also have been overruled on procedural grounds. The objections that may be raised through the dilatory exception include those of prematurity and lack of procedural capacity. La. C.C.P. art. 926(A)(1), (6). All objections which may be raised through the dilatory exception are waived unless pleaded therein. La. C.C.P. art. 926(B). Prematurity of a lawsuit is determined by the facts existing at the time suit is filed.
 
 Plaisance v. Davis,
 
 03-0767, p. 6 (La.App. 1st Cir.11/7/03), 868 So.2d 711, 716,
 
 writ denied,
 
 03-3362 (La.2/13/04), 867 So.2d 699. Although Ms. Springer has amended her petition multiple times, the |12factual circumstances upon which the objection of prematurity was based obviously existed at the time the original petition was filed, and were unaffected by any amendments. Accordingly, having failed to raise the objection of prematurity in his original dilatory exception, in which the objection of lack of procedural capacity was raised, Mr. Harris’s objection of prematurity was procedurally waived.
 

 DECREE
 

 The summary judgment of the trial court dismissing with prejudice the cause of action of the plaintiff, Jamie Pinegar Springer, against the defendants, Michael Cascio and Farmers Insurance Exchange, is affirmed. The judgment of the trial court sustaining the dilatory exception of prematurity of the defendant, Bradley Harris, is reversed, and the matter remanded to the trial court for further proceedings. The costs of this appeal are assessed in equal proportions to the plaintiff and the defendant, Bradley Harris.
 

 SUMMARY JUDGMENT AFFIRMED; JUDGMENT SUSTAINING EXCEPTION REVERSED AND CASE REMANDED.
 

 [1]
 

 . After this action was instituted, the plaintiff married, and now uses her husband’s surname,
 

 [2]
 

 . Although the record does not so reflect, the exceptions may have been abandoned as moot.
 

 [3]
 

 . The mere fact that the exact nature of an accident is unknown does not necessarily create a genuine issue of material fact precluding summary judgment.
 
 See, e.g., Bradford v. Kaster,
 
 98-1051, 98-0758, p. 4 (La.App. 1st Cir.5/14/99), 732 So.2d 827, 831.